**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

No. 15-2783
_____

UNITED STATES OF AMERICA

v.

OMALI MCKAY,
                    Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2-12-cr-00252-001)
District Judge:  Honorable David S. Cercone

Submitted under Third Circuit LAR 34.1(a)
November 7, 2016

Before:  JORDAN, GREENAWAY, JR., and RENDELL, Circuit Judges

(Opinion filed: December 9, 2016)

_____

O P I N I O N*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, Circuit Judge:

Defendant Omali McKay pleaded guilty to a variety of drug and money laundering charges. On appeal, his counsel has filed a motion to withdraw and an *Anders v. State of California*, 386 U.S. 738 (1967) brief. Because we agree that appellate counsel has adequately fulfilled her responsibilities under Third Circuit Local Appellate Rule 109.2(a), and our independent review of the record reveals no non-frivolous issues for appeal, we will grant counsel's motion to withdraw, affirm the District Court's rulings on all grounds, and deny McKay's motion for new counsel.

## I. Facts

On August 25, 2012, Pennsylvania State Police arrested Omali McKay after a traffic stop. At the time, McKay was the suspect in a reported domestic violence incident from the previous night. The officer who conducted the stop recognized McKay and stopped the vehicle on that ground.

Following the stop, state police executed a search warrant of two homes occupied by McKay. They obtained the warrant based on a nineteen-page affidavit of probable cause prepared by State Trooper Edward Walker. The document relayed Walker's knowledge of McKay's alleged drug trafficking, money laundering, domestic violence, and terroristic threats. Details included a cash purchase for $235,000 of one of McKay's residences and McKay's ownership and registration of three vehicles without a lien, despite McKay's reporting income of barely $4,000 in 2010.

The affidavit also included statements from three named informants: (1) Noelle Mitchell, McKay's estranged girlfriend; (2) Holli Mitchell, Noelle's sister; and (3) Christopher Fennel, a cocaine user.[1] Noelle Mitchell asserted that McKay sold cocaine and kept large amounts of cash in his home. She said that McKay traveled to and from New York to purchase cocaine, and that she had seen him in possession of firearms. Finally, she said McKay was involved in domestic violence, including sending threatening text messages, which Trooper Walker downloaded from her phone.

Holli Mitchell asserted that she knew McKay was selling both crack and powder cocaine, and that she had never known him to have a job. She also arranged for her uncle to buy crack cocaine from McKay. She further asserted that she saw McKay strike Noelle and throw her down the steps. Fennel said he purchased powder and crack cocaine from McKay at least thirty times between May 2011 and July 2012.

The affidavit also indicated that from November 2011 to August 2012, police surveilled McKay's properties. Surveillance did not observe McKay traveling to or from New York, nor did it observe any drug transactions. Further, two traffic stops of the car failed to find any drugs. However, surveillance observed that McKay did not appear to work in his purported lawn care business. Officers observed behavior they considered counter-surveillance that correlated with drug trafficking.

Police executed the search warrants based on this affidavit of probable cause. Based on these searches, McKay was eventually charged with (1) two counts of

---

[1] Two other named informants also said that they saw McKay holding a gun and making threats.

possession with intent to distribute and conspiracy to distribute cocaine and crack cocaine; (2) one count of possession of a firearm in furtherance of drug trafficking; (3) conspiracy to commit money laundering; (4) sixty-nine counts of money laundering; and (5) five counts of engaging in money transactions using property derived from unlawful activity.

The defense filed a total of four motions challenging the warrants, three of which are relevant to this case.[2] The first motion challenged a warrant for one of the searches as expired: the warrant listed 2:16 P.M. on August 25, 2012 as both the time of signing and the time of expiration. The second motion was a probable cause challenge based on the alleged unreliability of Noelle Mitchell.

The third motion was a *Franks v. Delaware*, 438 U.S. 154 (1978) probable cause challenge, alleging that the information relied upon by Walker in the affidavit was deliberately false and/or made in reckless disregard for the truth. In brief, McKay argued that the investigation did not corroborate Mitchell's accusation that McKay regularly traveled to New York to buy cocaine. He also alleged that the affidavit was unreliable because Mitchell stated that she and McKay visited McKay's mother on those trips to New York, but immigration records indicated that McKay entered the United States on a visa to attend his mother's funeral.[3]

---

[2] One of the motions to suppress was based on the car stop, and this was not preserved in the plea agreement.

[3] McKay's stated purpose in the immigration record was in relatively small print on his visa card, and was one of many documents in McKay's alien file.

The District Court held a suppression hearing. There, the judge who signed the search warrant testified that he filled out the form incorrectly when he wrote that the warrant expired at the same time he signed the warrant. Then, at the *Franks* suppression hearing, the District Court denied all suppression motions. Thereafter, McKay pleaded guilty to multiple charges and waived appellate rights, leaving open for appeal (1) the suppression motions, discussed above, and (2) his sentencing, should the United States appeal the sentence or should the sentence "unreasonably exceed[]" the guideline range or the statutory limits. McKay was sentenced to 180 months' imprisonment, the statutory minimum. The court elected to impose partially consecutive rather than concurrent terms.

Although counsel then advised McKay that she did not believe there were any non-frivolous issues to appeal, McKay was not willing to withdraw his appeal. Counsel filed an *Anders* brief and a motion to withdraw. In response, McKay filed a motion for the court to appoint new appellate counsel. McKay did not file a pro se brief.

## II. Discussion[4]

When court-appointed defense counsel finds a criminal appeal "wholly frivolous" after a "conscientious examination" of the defendant's case, she "should so advise the court and request permission to withdraw." *Anders*, 386 U.S. at 744. In such cases, defense counsel should submit an accompanying brief "referring to anything in the record that might arguably support the appeal." *Id.* Permission to withdraw may be granted if (1) counsel's *Anders* brief "adequately fulfill[s]" the responsibilities set forth in Third Circuit

---

[4] We have jurisdiction pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction under 18 U.S.C. § 3231.

Local Appellate Rule 109.2(a) and (2) independent review of the record reveals only frivolous issues. *Simon v. Gov't of V.I.*, 679 F.3d 109, 114 (3d Cir. 2012).

Thus, we first ask whether counsel's brief adequately fulfills *Anders*'s requirements. To do so, pursuant to Local Appellate Rule 109.2(a), defense counsel must (1) "thoroughly examine[]" the record "in search of appealable issues" and (2) "explain why [those] issues are frivolous." *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001) (citing *United States v. Marvin*, 211 F.3d 778, 780 (3d Cir. 2000)). The brief must indicate "conscientious examination" of the record. *Id.* (quotation marks and citation omitted).

Here, counsel's brief meets and surpasses this standard. Counsel's appellate work was simplified by McKay's waiver limiting his grounds for appeal. To start, counsel's brief discusses the validity of the appellate waiver, concluding that there are no grounds on which to find enforcement of the waiver a miscarriage of justice. Then, she explains why the expired warrant did not require suppression, why *Franks v. Delaware* did not require suppression, and why the affidavit at issue made a substantial showing of probable cause. Finally, counsel explains why the sentence imposed is legal. In each section of the brief, counsel explains the argument McKay raised below and informs the court why the issue is frivolous on appeal, citing to relevant legal authority. Because McKay's counsel fulfilled Local Appellate Rule 109.2(a)'s requirements, we accept the *Anders* brief as adequate.

This, however, does not end our inquiry. We must still conduct our own "independent review" of the record to determine if there are any non-frivolous issues for

6

appeal. *Youla*, 241 F.3d at 300. When the *Anders* brief has been found adequate, as here, we only look to those issues and portions of the record identified in the *Anders* brief. "An appeal on a matter of law is frivolous where none of the legal points are arguable on their merits." *Simon*, 679 F.3d at 114 (citing *Youla*, 241 F.3d at 301).

Like McKay's counsel, we find that the issues raised are without merit. As a preliminary matter, we agree that McKay's appellate waiver was valid. McKay had an appropriate Rule 11 colloquy: the court below found McKay competent to change his plea, and it ensured that McKay understood the waiver. Moreover, McKay's appellate waiver preserved key grounds for appeal, and did not result in manifest injustice. Thus, McKay's plea colloquy limited his grounds for appeal. *See United States v. Gwinnett*, 483 F.3d 200, 204–06 (3d Cir. 2007) (knowingly entered appellate waivers are valid, unless resulting in manifest injustice).

Turning to the substance of the issues raised on appeal, we first agree that the expired warrant does not require suppression. The record makes clear that the judge issuing the warrant simply made a clerical error in listing the expiration time. True, this court has not addressed the effect of such a "scrivener's error" on the validity of a warrant. But other courts have found that similar errors do not invalidate a warrant. *United States v. Gary*, 528 F.3d 324, 328–29 (4th Cir. 2008) (typographical error did not render warrant deficient); *United States v. Waker*, 534 F.3d 168, 172 (2d Cir. 2008) (minor clerical errors generally not fatal to search warrants).

What is more, suppression is not required when officers execute a warrant in good faith. *United States v. Franz*, 772 F.3d 134, 143–45 (3d Cir. 2014). The exclusionary rule

7

is meant to deter conduct that is "deliberate, reckless, or grossly negligent . . . or in some circumstances recurring or systemic," *Herring v. United States*, 555 U.S. 135, 144 (2009), not isolated errors made in good faith. Here, there is no doubt the police's actions were not deliberate, reckless, or grossly negligent. Less than four hours elapsed between the warrant's issuance and execution. Further, the error contained in the warrant here was the fault of the judge, rather than the police. *Cf. Massachusetts v. Shepard*, 468 U.S. 981, 990–91 (1984) (exclusionary rule is meant to deter police misconduct, so judge's error creates less cause for constitutional concern). At most, Walker was merely negligent when he failed to notice the warrant had expired. Thus, there is no merit to the claim that the warrant's expiration warranted suppression.

Second, McKay's *Franks v. Delaware* challenge does not require suppression. Below, the defense argued that Noelle Mitchell's statements as to her interactions with McKay's mother were false, because McKay's visa to enter the United States indicated that he was coming to attend his mother's funeral. He further argued that police surveillance over an extended time failed to corroborate any of Noelle Mitchell's statements as to drug trafficking.

This argument is without merit for two reasons. First, under *Franks* the defendant must demonstrate that the warrant is based on false statements made either knowingly and intentionally or with reckless disregard for the truth. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). There must be some offer of proof accompanying the allegations that there was deliberate falsehood. *Franks*, 438 U.S. at 171. Here, McKay presented no testimony supporting his *Franks* motion. Pointing to a small, unverified section of text on

his visa that contradicted an element of Mitchell's statement does not suffice. Thus, he did not make the substantial preliminary showing required.

Second, McKay must be able to show that the allegedly false statements were material to the probable cause determination (i.e., that the remaining factual assertions could not support the probable cause determination). *Franks*, 438 U.S. at 171–72 (1978). But even without any of Noelle Mitchell's statements, there remained significant evidence supporting the affidavit: (1) statements of other informants; (2) documentary evidence as to the home and car ownership; and (3) the police's observations of McKay's conduct that aroused suspicion of drug trafficking. Thus, even without the statements McKay challenged below, there remained, as required, "a fair probability that contraband or evidence of a crime [would] be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Suppression on these grounds was not warranted.

McKay's third argument preserved for appeal was that the affidavit did not set forth probable cause for the home searches. Our review of the District Court's evaluation of such claims is plenary, but we review with deference the initial probable cause determination made by the issuing judge. *See United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).

Here, the District Court's examination of the affidavit explained the substantial basis for the issuing judge's finding of probable cause: interviews with individuals supporting the probable cause; documentation of text messages; surveillance information; and seemingly implausible income information. Though McKay challenges Noelle

Mitchell's reliability, even without her statements there was substantial evidence supporting the search warrant. Thus, there is no meritorious ground for appeal here.

Finally, McKay's counsel addressed his sentence. Even assuming *arguendo* that McKay did not waive his right to appeal the sentence imposed, his sentence of 180 months, while above the Guidelines range, is the statutory minimum sentence and so does not present any meritorious grounds for appeal. In fact, the only discretion involved at sentencing was whether part of the sentence should run consecutively or concurrently. In general, federal courts "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings . . . ." *Setser v. United States*, 132 S. Ct. 1463, 1468 (2012). Thus, the District Court had discretion to act as it did, and there is no non-frivolous ground for appeal.

Having concluded that the appeal is clearly frivolous, we need not appoint new counsel. *United States v. Coleman*, 575 F.3d 316, 321 (3d Cir. 2009).

**III. Conclusion**

Accordingly, for the reasons above we grant counsel's motion to withdraw, deny McKay's motion for new counsel, and affirm the District Court's rulings.